**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID G. MARESCA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. _______________________ |
| | : | |
| PEPSICO, INC. d/b/a PEPSICO | : | JURY TRIAL DEMANDED |
| BEVERAGES NORTH AMERICA, and | : | |
| GRAYHAWK LEASING LLC, | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff David G. Maresca ("Plaintiff" or "Mr. Maresca"), by and through his undersigned counsel, brings this civil action against Defendants PepsiCo, Inc. d/b/a PepsiCo Beverages North America and Grayhawk Leasing LLC (collectively, "Defendants" or "Pepsi"), and avers as follows:

## I. INTRODUCTION

1. This is an action for unpaid wages and overtime under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 et seq. ("PMWA"), and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and for retaliation in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), with an alternative claim for wrongful discharge in violation of Pennsylvania public policy.

2. Mr. Maresca worked for more than five years as a service technician supporting Defendants' beverage-equipment operations in eastern Pennsylvania. Each workday, Defendants required him to log into a company-issued iPad, receive his route and job assignments, and drive

a company service vehicle to customer locations across the region—all before Defendants started paying him. Each evening, Defendants required technicians who worked past 6:30 p.m. to punch out and then drive home on their own time.

3. When Mr. Maresca questioned this practice, the Pennsylvania Department of Labor & Industry confirmed to him that he was legally entitled to be paid for his workday, not merely for the portion of it that Defendants chose to count. Mr. Maresca spoke up and informed Defendants of this, namely to his managers, at meetings, and during Defendants' own investigatory interview.

4. Defendants' response was to suspend him and then fire him. Remarkably, Defendants put their motive in writing. The termination letter, dated February 6, 2025 and signed by manager Christine Hilt, recites that during his investigatory interview Mr. Maresca "acknowledged that [he] feel[s] entitled to receiving pay as soon as [he] log[s] into the company iPad prior to [him] getting to [his] first stop."

5. Firing a worker for asserting his statutory right to be paid is unlawful retaliation. Refusing to pay him for compensable work time is an unlawful wage practice. Mr. Maresca brings this action to recover his unpaid wages and overtime, his lost earnings from the retaliatory termination, liquidated damages, and all other available relief.

## II. JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over Plaintiff's Pennsylvania state-law claims pursuant to 28 U.S.C. § 1367, because those claims arise from the same facts and form part of the same case or controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, including at Defendants' Allentown, Lehigh County, Pennsylvania facility located at 2099 Vultee Street, Allentown, Pennsylvania 18103, and because Defendants conduct business in this District.

8. No administrative exhaustion is required for any claim asserted in this Complaint.

## III. THE PARTIES

9. Plaintiff David G. Maresca is an adult individual residing in Saylorsburg, Monroe County, Pennsylvania.

10. Defendant PepsiCo, Inc. is a global food and beverage company that operates its North American beverage business under the name PepsiCo Beverages North America ("PBNA"), with operations in this District, including the Allentown facility at which Plaintiff was based. The letters suspending and terminating Plaintiff's employment were issued on PBNA letterhead by PBNA management and human-resources personnel, and the termination letter states that Plaintiff's employment was "with PepsiCo Beverages North America."

11. Defendant Grayhawk Leasing LLC is an affiliate of PepsiCo, Inc. and, on information and belief, served as Plaintiff's employer of record for payroll and related purposes.

12. At all relevant times, Defendants jointly employed Plaintiff within the meaning of the FLSA and the PMWA. They shared and co-determined the terms and conditions of his employment, including his rate and method of pay, his schedule, his supervision, and the decisions to suspend and terminate him, and they operated as a single integrated enterprise with common management, common human-resources administration, and common control.

13. At all relevant times, each Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the PMWA, 43 P.S. § 333.103(g).

14. At all relevant times, Defendants constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), with annual gross volume of sales made or business done of not less than $500,000, and Plaintiff was individually engaged in commerce, including through his daily use of instrumentalities of interstate commerce and his servicing of equipment moving in commerce.

## IV. FACTUAL ALLEGATIONS

### A. Mr. Maresca's Employment

15. Defendants employed Mr. Maresca as a service technician from on or about December 3, 2019, until his termination effective February 6, 2025.

16. Mr. Maresca worked in Defendants' equipment-services operation serving the Allentown and Pittston areas, maintaining, repairing, and servicing beverage equipment at customer locations across eastern Pennsylvania.

17. At the time of his termination, Mr. Maresca was paid $27.00 per hour.

18. Throughout his employment, Mr. Maresca performed his job capably. Before the events described below, he had never been warned, written up, reprimanded, or disciplined.

### B. Defendants' Policy of Not Paying Technicians for All Hours Worked

19. Defendants required their service technicians, including Mr. Maresca, to drive company service vehicles to customer locations each day. Some technicians took their vehicles home; other technicians parked them at Defendants' shop.

20. Defendants required technicians, including Mr. Maresca, to use a company-issued iPad to receive routes, job assignments, dispatches, and work orders; to record their work; and to communicate with dispatch and supervision.

21. Each morning, Mr. Maresca's workday began, as a practical and legal matter, when he logged into the company iPad, received and reviewed his assignments, and began driving the company vehicle to his first assigned job. This was work that Defendants required, controlled, and benefited from.

22. Defendants nevertheless maintained a policy or practice of not paying technicians for this time. Under Defendants' policy, technicians who took their vehicles home were required to arrive at their first job by 10:00 a.m., and technicians who parked at the shop were required to be at their vehicles at 10:00 a.m., with paid time beginning only then regardless of when the technician logged into the iPad, received his assignments, and began driving.

23. For Mr. Maresca, the unpaid morning travel and work time was substantial. For a period of his employment, he was assigned to a territory approximately an hour and a half from his home, requiring approximately three hours of unpaid driving per day. After his territory changed, his first jobs were regularly thirty minutes to more than an hour away.

24. At the end of the day, Defendants required technicians who worked past 6:30 p.m. to punch out and then drive home, in the company vehicle, still responsible for it and its equipment, on unpaid time.

25. Mr. Maresca also regularly performed other unpaid work outside his punched hours, including logging work in the iPad, communicating with dispatch and supervisors, and securing the vehicle and equipment.

26. In workweeks in which Mr. Maresca's paid hours plus his unpaid travel and work time exceeded forty hours, which occurred regularly, Defendants failed to pay him overtime compensation at one and one-half times his regular rate for all hours worked over forty.

27. Under the PMWA and its implementing regulations, "hours worked" includes time during which an employee is required by the employer to be on duty or to travel as part of the duties of the employee, and the exclusions of the federal Portal-to-Portal Act do not apply to the PMWA.

28. The rights to be paid for hours worked and to receive overtime under the FLSA and the PMWA are statutory rights that exist independent of any employment agreement and cannot be waived, released, or bargained away by any private agreement or workplace policy.

29. Defendants possess complete records of the unpaid time at issue, including iPad log-on and log-off data, dispatch and work-order records, telematics and GPS data from the company vehicles, and time and payroll records.

**C. Mr. Maresca Asserts His Right to Be Paid**

30. During his employment, Mr. Maresca contacted the Pennsylvania Department of Labor & Industry regarding Defendants' pay practices. The Department advised him that he was entitled to be paid from the time he logged onto the company device until the time he logged off.

31. Mr. Maresca thereafter complained about Defendants' practice of not paying technicians for all hours worked, including to his managers and in group settings, asserting in good faith that he and his co-workers were entitled to be paid for their full workday.

32. Mr. Maresca was known to management, including Christine Hilt, Defendants' PES Manager, as an employee who was vocal about technicians' pay and working conditions.

33. Mr. Maresca's complaints about unpaid work time were protected activity under the FLSA and Pennsylvania law.

**D. Antagonism, Suspension, and Termination**

34. Ms. Hilt was hostile to Mr. Maresca's complaints. Among other things, when Mr. Maresca raised employee concerns at a technicians' meeting attended by Ms. Hilt, she responded dismissively and with hostility in front of his co-workers.

35. On December 3, 2024, following an incident in which Ms. Hilt told Mr. Maresca to "shut up and grab a sandwich," Mr. Maresca filed a complaint with Defendants' Human Resources department regarding Ms. Hilt's conduct toward him.

36. On information and belief, no meaningful action was taken on that complaint.

37. On January 30, 2025, within weeks of that complaint, and amid his continuing assertions regarding unpaid work time, Defendants summoned Mr. Maresca to a meeting with managers and Human Resources "to discuss concerns around Time and Attendance" and suspended him, effective immediately, "pending further investigation for potential violation of Company Policy." The suspension letter was issued by Brittney Dellaquila, Senior Human Resources Representative.

38. During the ensuing investigatory interview, Mr. Maresca told Defendants directly that he was entitled to be paid for his time from the moment he logged into the company iPad.

39. On February 6, 2025, Defendants terminated Mr. Maresca's employment, effective that day, by letter signed by Ms. Hilt.

40. The termination letter states, in relevant part: "During your interview, among other things, you acknowledged that you feel entitled to receiving pay as soon as you log into the company iPad prior to you getting to your first stop."

41. Defendants thus documented, in the termination letter itself, that Mr. Maresca's assertion of his right to be paid for his working time was among the matters on which the termination decision rested.

42. Prior to his suspension and termination, Mr. Maresca had never been disciplined in more than five years of employment. Defendants proceeded directly from suspension to discharge, without any warning, progressive discipline, or lesser sanction.

43. Defendants' purported reason for the termination – i.e., an alleged "Time and Attendance" violation, was pretextual. The alleged "violation" was, at bottom, Mr. Maresca's insistence that the time he spent working be treated as what it was: paid working time.

44. On information and belief, Defendants terminated Mr. Maresca to silence his wage complaints and to make an example of him to other technicians who might assert the same rights.

45. As a direct and proximate result of the termination, Mr. Maresca, then sixty-seven years old, after more than five years of service, was left without income, suffered and continues to suffer lost wages and benefits, and sustained emotional distress, humiliation, and financial hardship.

**E. Willfulness**

46. Defendants knew of their obligations under the FLSA and the PMWA. They are sophisticated employers with professional human-resources and legal functions.

47. Mr. Maresca's complaints, and the Pennsylvania Department of Labor & Industry's guidance that he relayed, placed Defendants on actual notice that their pay practices were unlawful.

48. Defendants nevertheless continued the practices, and terminated Mr. Maresca rather than correct them.

49. Defendants' violations were willful, and Defendants did not act in good faith or with reasonable grounds to believe that their conduct complied with the FLSA or the PMWA.

**COUNT I**
**Unpaid Wages and Overtime – Pennsylvania Minimum Wage Act**
**(43 P.S. § 333.101 et seq.)**

50. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

51. At all relevant times, Plaintiff was an "employee" and Defendants were "employers" within the meaning of the PMWA.

52. The time Plaintiff spent each day logging into and using the company iPad, receiving and reviewing assignments, driving the company vehicle to his first job, driving after punch-out when required to work past 6:30 p.m., and performing related tasks constituted "hours worked" under the PMWA and 34 Pa. Code § 231.1.

53. The Portal-to-Portal Act's exclusions do not apply to the PMWA, and the PMWA provides protections greater than the FLSA with respect to the compensability of such time.

54. Defendants failed to pay Plaintiff for all hours worked and failed to pay him overtime compensation at one and one-half times his regular rate for all hours worked in excess of forty per week, in violation of 43 P.S. §§ 333.104 and 333.113.

55. No agreement, policy, or purported waiver excuses Defendants' noncompliance, because PMWA rights cannot be abridged by private agreement.

56. Defendants' violations extend throughout the three-year period preceding the filing of this action through the end of Plaintiff's employment.

57. As a direct and proximate result, Plaintiff suffered damages, and he is entitled to his unpaid wages and overtime, prejudgment interest, costs, and attorneys' fees under 43 P.S. § 333.113.

**COUNT II**
**Unpaid Overtime – FLSA**
**(29 U.S.C. §§ 207, 216(b))**

58. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

59. At all relevant times, Plaintiff was a non-exempt employee entitled to the protections of the FLSA, and Defendants were his employers and an enterprise engaged in commerce.

60. Once Plaintiff commenced his first principal activities of the day, including logging into the company iPad, receiving and reviewing dispatches and assignments, and undertaking required work, his continuous workday began, and the time thereafter, including travel to his first stop, was compensable under the FLSA.

61. In workweeks within the applicable limitations period, Plaintiff worked more than forty hours, counting his unpaid pre- and post-shift work and travel time, and Defendants failed to pay him overtime compensation at one and one-half times his regular rate for those hours, in violation of 29 U.S.C. § 207.

62. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), extending the limitations period to three years.

63. Defendants did not act in good faith or with reasonable grounds to believe their conduct complied with the FLSA.

64. As a direct and proximate result, Plaintiff suffered damages, and he is entitled to his unpaid overtime compensation, an equal amount as liquidated damages, costs, and attorneys' fees under 29 U.S.C. § 216(b).

**COUNT III**
**Retaliation – FLSA**
**(29 U.S.C. § 215(a)(3))**

65. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

66. Plaintiff engaged in protected activity under the FLSA by complaining, orally and in substance, to Defendants' management about Defendants' failure to pay technicians for all working time; by contacting the Pennsylvania Department of Labor & Industry regarding the practice; and by asserting his right to be paid, including during Defendants' January–February 2025 investigatory interview.

67. Plaintiff's complaints were sufficiently clear and detailed for a reasonable employer to understand them as assertions of rights protected by wage-and-hour law. Defendants in fact so understood them, their own termination letter recites his assertion that he was "entitled to receiving pay as soon as [he] log[s] into the company iPad."

68. Defendants took materially adverse actions against Plaintiff because of his protected activity, including suspending him on January 30, 2025, and terminating him on February 6, 2025.

69. The causal connection is established by, among other things, Defendants' own written acknowledgment in the termination letter; the temporal proximity between his assertions of wage rights and the adverse actions; the absence of any prior discipline in more than five years; Defendants' escalation directly from suspension to termination without progressive discipline; and the pretextual character of the stated "Time and Attendance" rationale.

70. Defendants' conduct was willful, malicious, and undertaken in reckless disregard of Plaintiff's rights.

71. As a direct and proximate result, Plaintiff suffered damages, including lost wages and benefits from February 6, 2025 forward, and emotional distress, humiliation, and financial hardship.

72. Plaintiff is entitled to all legal and equitable relief available under 29 U.S.C. § 216(b) for retaliation, including lost wages and benefits, an equal amount as liquidated damages,

reinstatement or front pay, compensatory damages, punitive damages as allowable, interest, costs, and attorneys' fees.

## COUNT IV
## Wrongful Discharge in Violation of Public Policy (in the Alternative)
## (Pennsylvania Common Law)

73. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

74. This Count is pleaded in the alternative, to the extent any of Plaintiff's statutory retaliation remedies is held unavailable or inadequate.

75. The Commonwealth of Pennsylvania has a clear public policy, embodied in the PMWA and related statutes, that employees be paid for the hours they work and that they be free to seek information and assistance from the Pennsylvania Department of Labor & Industry regarding their wage rights.

76. Defendants terminated Plaintiff's employment because he asserted his statutory wage rights and sought and relayed guidance from the Pennsylvania Department of Labor & Industry.

77. A termination on these grounds violates the public policy of the Commonwealth, and no statutory remedy fully redresses it to the extent Plaintiff's statutory claims are held inapplicable.

78. As a direct and proximate result, Plaintiff suffered damages, including lost wages and benefits, emotional distress, humiliation, and financial hardship, and Defendants' outrageous conduct warrants punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David G. Maresca respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. Unpaid wages and overtime compensation under the PMWA and the FLSA;

b. Liquidated damages under the FLSA in an amount equal to his unpaid overtime and his lost wages from the retaliation;

c. Back pay, front pay, and lost benefits resulting from Plaintiff's unlawful suspension and termination, or reinstatement;

d. Compensatory damages, including for emotional distress, humiliation, and financial hardship, as allowable;

e. Punitive damages, as allowable;

f. Pre-judgment and post-judgment interest;

g. Reasonable attorneys' fees and costs under 29 U.S.C. § 216(b) and 43 P.S. § 333.113; and

h. Such other legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: 9/04/2026

Respectfully submitted,

HENNESSY LAW, P.C.

By: /s/ Brendan D. Hennessy

Brendan D. Hennessy, Esquire
PA Attorney I.D. No. 91831
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(484) 875-3111
bhennessy@hennessylawfirm.com
*Counsel for Plaintiff David G. Maresca*